MDR

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luis Gutierrez-Valencia, | No.   CV-24-00300-PHX-JAT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Ryan Thornell, et al., | |
| Defendants. | |

    Self-represented Plaintiff Luis Gutierrez-Valencia, who is confined in the Arizona State Prison Complex (ASPC)-Lewis, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 and a Motion for Preliminary Injunction and, subsequently, paid the filing and administrative fees for this action.  The Court dismissed the Complaint because Plaintiff had failed to state a claim, denied without prejudice the Motion for Preliminary Injunction, and gave Plaintiff an opportunity to file an amended complaint that cured the deficiencies the Court identified.

    After seeking and receiving an extension of time, Plaintiff filed a First Amended Complaint (Doc. 13).  Attached at the end of the First Amended Complaint is a Motion for Preliminary Injunction (Doc. 13 at 49-52).  The Court will require Defendant Henry, in his individual capacity only, to answer the Eighth Amendment claim in Count One; dismiss the remaining claims and Defendants; and deny the Motion for Preliminary Injunction.

. . . .

. . . .

TERMPSREF

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

TERMPSREF

- 2 -

## II.     First Amended Complaint

In his two-count First Amended Complaint,[1] Plaintiff names as Defendants ASPC-Eyman Deputy Warden Henry, Assistant Deputy Warden Martinez, Special Security Unit (SSU) Sergeant Casterjohn, SSU Officer W. Ochoa, and Central Office Grievance Coordinator Julie Bowers. He seeks declaratory and injunctive relief, monetary damages, and his filing fees.

In **Count One**, Plaintiff raises a medical care claim against Defendant Henry in his individual and official capacities. (Doc. 13 at 9.)[2] Plaintiff alleges he has had a special needs order for polarized sunglasses for years because, without them, he suffers daily severe migraines. (*Id*. at 9-10.) Plaintiff claims Defendant Henry "abused his power, retaliated against Plaintiff and denied/delayed medically prescribed treatment for a serious medical need." (*Id*. at 9.) Specifically, Plaintiff asserts Defendant Henry instructed his subordinates not to allow Plaintiff to have his polarized Ray-Ban sunglasses "solely because he did not want [Plaintiff] to have them [because] they were too nice for [Plaintiff]." (*Id*.) Plaintiff contends Defendant Henry intentionally, knowingly, and deliberately withheld Plaintiff's medically prescribed treatment "as a form of abuse of power and retaliation for [Plaintiff] writing grievances." (*Id*.) He alleges Defendant Henry continued to withhold Plaintiff's sunglasses "even after seeing the documents and being told directly by Plaintiff of his serious special needs [and] why and what it does" to Plaintiff when he does not have the polarized sunglasses. (*Id*. at 10.)

Plaintiff claims that in June or July 2023, he approached Defendant Henry about Defendant Henry withholding his sunglasses. (*Id*.) According to Plaintiff, Defendant Henry indicated he was withholding them because he could and because he did not like Plaintiff. (*Id*.) Plaintiff asserts he started arguing with Defendant Henry, telling Defendant

---

[1] Plaintiff's First Amended Complaint contains misspellings, misplaced or omitted punctuation and parentheses, and the use of an ampersand instead of the word "and." The Court, when quoting the First Amended Complaint, has corrected these without specifically noting them.

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

Henry that he "really need[ed the sunglasses] because [he has] daily severe migraines." (*Id.*) He contends Defendant Henry told Plaintiff that he would not get the sunglasses because they were "too nice" for Plaintiff and that Plaintiff "would get them over [Defendant Henry's] dead body." (*Id.*) According to Plaintiff, Defendant Henry then began yelling at Plaintiff, indicating he was done talking to Plaintiff and Plaintiff should "get away from him [and] file another grievance if [Plaintiff didn't] like it." (*Id.*) Plaintiff asserts Defendant Henry reiterated he did not like Plaintiff, stated he wished Plaintiff "would try something with him," and put a key between his fingers, made a fist, and said there would "be a lot of blood" and it would be Plaintiff's. (*Id.* at 10-11.)

Plaintiff alleges Defendant Henry's deliberate indifference caused an unnecessary and wanton infliction of pain without any legitimate security concern. (*Id.* at 11.) He contends he suffered "severe and daily pain" from debilitating migraines for over nine months. (*Id.*)

In **Count Two**, Plaintiff alleges Defendants, in their individual and official capacities, subjected him to retaliation. He contends Defendants knowingly and intentionally violated his rights by their "deliberate indifference" to "the continued retaliation and abuse of power in enforcing a practice, custom, pattern and[/]or written or unwritten policy that enables SSU and all Defendants to retaliate against Plaintiff for exercising his rights filing lawsuits [and] grievances" and helping other inmates file grievances. (*Id.* at 3.) He claims Defendants "weaponized" the Arizona Department of Corrections, Rehabilitation and Reentry's (ADC) Do Not House With (DNHW), disciplinary, and classification systems, as well as SSU memoranda and reports, to (a) target him; (b) keep him in Supermax, isolation, and prolonged lockdown; (c) and "chill future speech" and deter him from filing additional lawsuits or grievances and from helping others do the same. (*Id.* at 3-5.) Plaintiff alleges that although he advised Defendants of their "retaliation, unconstitutional behavior, threatening, intimidation, harassment and targeting with DNHW [restrictions and] false charges," they were "deliberately indifferent" to his "pleas for help," failed to protect him, and failed to "correct the wrong." (*Id.* at 3.)

Plaintiff has discussed, in serial fashion, what each Defendant allegedly did or failed to do. Despite this resulting in an extremely disjointed, rambling, and repetitive summary, the Court has done the same.

### A.     Defendant Martinez

In the section of Count Two regarding Defendant Martinez, Plaintiff alleges that on July 17, 2023, Defendant Martinez, "with the assistance and encouragement of all Defendants," required Plaintiff and 30 other inmates to attend a townhall meeting. (*Id*. at 12.) At the meeting, Defendant Martinez "verbally abuse[d]" the inmates, screaming that (a) she was tired of the inmate assaults on the yard, (b) Defendant Henry was "with her," and (c) she would send the inmates to lockdown if "it d[id] not stop" and would "keep sending [them] back for 30 days at a time or make something up to keep [them] there." (*Id*.)

Plaintiff claims he raised his hand when Defendant Martinez asked if anyone "was not happy on her yard and wanted to leave" and told them they would not be punished and would be transported to another medium custody yard. (*Id*. at 12-13.) He asserts he told Defendant Martinez he was not responsible for the actions of other inmates, he was "not an overseer for the Mexican Americans," and it was "against policy and the law for her to do that." (*Id*. at 13.) Plaintiff contends Defendant Martinez kept yelling, threatening, and intimidating, stating that she was the assistant deputy warden and had the "backing" of the SSU and Defendant Henry. (*Id*.) When Plaintiff told Defendant Martinez that he was "not in charge of anyone," she indicated the SSU had labeled the inmates at the meeting as "influential inmates" and, "as such," Plaintiff would be "held responsible." (*Id*.)

Plaintiff contends Defendant Martinez "carried out her threats." (*Id*.) He claims "they" created "false reports" and DNHW restrictions as "retaliation for lawsuits [and] grievances." (*Id*.) According to Plaintiff, he was "hunted down by SSU officials" after the town hall, handcuffed, and locked in a cell with other inmates "for speaking out." (*Id*.) He asserts he was told he had been assigned to "investigative detention," was placed on "disciplinary" for "threatening or intimidating (gang activity)," was sent to

"detention/Supermax," and had several DNHW restrictions added to "keep [him] off the yards."³  (*Id*.)  Plaintiff alleges this was done "knowingly [and] willingly" and Defendant Martinez was "deliberately indifferent to [Plaintiff's] request for help."  (*Id*.)

Plaintiff alleges he filed a grievance regarding this issue and appealed the "false disciplinary [charge]."  (*Id*.)  He claims that after the disciplinary charge was dismissed, he remained in detention and then was moved to Supermax, although he "should have been sent back to the yard."  (*Id*.)  Plaintiff contends he "lost property" because of the move, or officials lost or threw away the property "out of retaliation."  (*Id*. at 14.)

Plaintiff alleges Defendant Martinez was a "key player" who was "able to correct the wrong" but "knowingly failed to do so."  (*Id*.)  He contends she was the "cause of Plaintiff's false disciplinary [charge]," "prolonged detention/Supermax," DNHW restrictions, and "anxiety and mental anguish."  (*Id*.)  He asserts her actions were retaliatory⁴ and did not "advance legitimate penological goals of order and discipline."  (*Id*.)

### B.     Defendant Casterjon

In the section of Count Two devoted to Defendant Casterjon, Plaintiff alleges Defendants "for years" have had "a custom and practice of creating ways to weaponize" ADC's DNHW and classification systems as a "tactic" to "target inmates" they have "labeled [as] influential, problematic and unmanageable," such as Plaintiff, who filed grievances and lawsuits and taught others to do the same.  (*Id*. at 16.)  He contends

---

³ Plaintiff alleges that while he was in detention, he was placed on the DNHW of an inmate he went to recreation with, "without any issues." (Doc. 13 at 14.) He claims this "tactic" was used by the SSU and Eyman Complex Administration "to keep inmates off the yard." (*Id*.)  Plaintiff contends the other inmate was taken to the Cook Unit and, therefore, Plaintiff was told he could not go to the Cook Unit or "any other yard" due to the DNHW restriction. (*Id*.)  According to Plaintiff, this was done because he filed grievances and lawsuits and helped others do the same. (*Id*.)

⁴ As discussed in more detail below, Plaintiff alleges the retaliation began in 2022 after Defendant Henry obtained Plaintiff's help digging holes for a recreation enclosure and Plaintiff subsequently filed grievances because he had not been paid a minimum wage for the work.  (Doc. 13 at 15.) He contends Defendants' actions and inactions were substantially motivated by a desire to punish Plaintiff for exercising his rights and were intended to chill future speech and additional grievances. (*Id*.)

Defendant Casterjon, "collectively and separately" was a "proximate cause" of the violations of Plaintiff's constitutional rights "due to his actions/inactions." (*Id*.) Plaintiff asserts Defendant Casterjon "had the power and opportunity to correct the wrongs committed," but failed to do so, even after being made aware of them. (*Id*.)

Plaintiff claims that after he filed a grievance in 2022 for not receiving a minimum wage for digging holes for a recreation fence, Defendant Casterjon arrived at the Cook Unit. (*Id*.) He allegedly told Plaintiff that he would "pull Plaintiff out" if there were issues with "Plaintiff's people"—the Mexican-American inmates. (*Id*.) Plaintiff contends he told Defendant Casterjon that he was "only speaking for himself and wanted to be left alone," because Plaintiff had been told that Defendant Casterjon "had a custom/practice of making false reports if you don't work for him." (*Id*.)

Plaintiff alleges Defendant Casterjon "tried calling Plaintiff out several times," but Plaintiff refused and requested the warden tell Defendant Casterjon to stop harassing him and "pulling him out" to discuss other inmates' problems. (*Id*. at 16-17.) Plaintiff asserts that "[w]eeks later," he was charged with "threatening and intimidating," which "allowed Defendants to send Plaintiff to Supermax." (*Id*. at 17.) He claims this was done because he filed grievances, helped other inmates do the same, and "refused to be an overseer for SSU." (*Id*.) Plaintiff asserts this was the "first false charge" "Defendants placed on [him]" and they "placed another DNHW on Plaintiff." (*Id*.)

Plaintiff asserts Defendants have "created a custom and pattern/practice of doing this." (*Id*.) He claims he "can show" the July 2023 disciplinary charge for threatening and intimidating (gang activity), which was dismissed on appeal, was "also a false charge constructed by Defendants to punish [him] for speaking out and filing grievances against Defendants." (*Id*.) He contends Defendants "manufactured false charges to shut [him] up." (*Id*.)

Plaintiff alleges that on July 17, 2023, Defendants "conspired" to retaliate, harass, intimidate, and threaten Plaintiff, and Defendant Casterjon was "deliberately indifferent to Plaintiff's pleas for help." (*Id*.) He contends Defendant Casterjon placed Plaintiff on

"investigative detention" and "placed Plaintiff on a false charge" for threatening and intimidating (gang activity) as a "tactic to remove Plaintiff from the yard" and send him to Supermax. (*Id*.)

Plaintiff alleges that when his disciplinary charge was dismissed, Defendants added four DNHW restrictions for Plaintiff. (*Id*.) He contends DNHW restrictions are added because an inmate was "severely assaulted" or "would be seriously assaulted or even killed." (*Id*. at 19.) Plaintiff alleges Defendants use DNHW restrictions "as a tactic" and issued the DNHW restrictions even though Plaintiff had "nothing to do with [them]" and "never even looked at [them] aggressive[ly]." (*Id*.) He claims one DNHW restriction was someone Plaintiff had been going to recreation with for forty days "without any issues." (*Id*. at 17-18.)

Plaintiff asserts that although the disciplinary charge was decided in his favor on appeal, he was forced to remain in Supermax because "Defendants" had added at least five DNHW restrictions. (*Id*. at 18.) He claims he filed paperwork to get out of Supermax, but was told "Cook Unit" was responsible for his continued detention in Supermax. (*Id*.) Plaintiff alleges Defendants kept him Supermax as "retaliation," despite being aware his disciplinary charge had been dismissed and the DNHW at the Cook Unit had been removed. (*Id*.) He also claims "they were deliberately indifferent to [his] cries for help." (*Id*.)

Plaintiff alleges he faced "prolonged isolation because [of] the actions/inactions" of Defendant Casterjon. (*Id*.) Plaintiff claims Defendant Casterjon "knowingly and intentionally created the false charge to target Plaintiff [and] send [him] to Supermax" and then "created a bunch of false DNHWs." (*Id*.) He asserts that "even after being able to go to the yard," Defendants "intentionally delayed Plaintiff from going to the yard" and "harassed, intimidated and retaliated against Plaintiff," kept him in Supermax, and gave him "the run around" to keep him confined in Supermax after the Cook Unit's DNHW had been removed. (*Id*.)

. . . .

### C. Defendant Ochoa

In the section of Count Two concerning Defendant Ochoa, Plaintiff alleges the SSU has a "practice, custom and pattern of taking power over every other prison official's position," "used these tactics as a weapon," and labeled Plaintiff as "influential" as a "loophole around policy." (*Id*. at 21.) He asserts the SSU uses memoranda and reports and "confidential informants for hire," who make statements without "credible or factual information." (*Id*.)

Plaintiff asserts that on July 17, 2023, Defendant Ochoa "had an agenda to get Plaintiff off Cook Unit" and placed in Supermax, which he carried out by "collectively/separately" drafting false memoranda and reports, issuing a false investigation and false disciplinary charge, and creating a "false DNHW." (*Id*. at 20-21.) He claims that even after the disciplinary charge was dismissed on appeal, he was "forced to remain in lockdown" because Defendants issued four other DNHW restrictions "to keep Plaintiff in prolonged isolation." (*Id*. at 20.) Plaintiff asserts Defendant Ochoa created the false reports, memoranda, and DNHW restrictions because he "could not use standards of DO 803.4.0 or DO 902.1.4."[5] (*Id*. at 21.)

Plaintiff alleges Defendant Ochoa "was made aware of Plaintiff's rights" but "continued to abuse his power" by "collectively and separately retaliating [and] harassing Plaintiff." (*Id*. at 19.) He asserts Defendant Ochoa "had no actual legitimate penal interest, other than unjustly keeping Plaintiff off the medium yards for his own purpose and retaliation." (*Id*. at 20.) Plaintiff contends he remained in prolonged detention, lost property, missed a special contact visit, and was "taken off the yard," for "nothing more than speaking out and helping others file grievances." (*Id*.)

Plaintiff contends his "conduct and/or speech at issue" was a "protected right" and there is a "common connection between [his] protected rights" and "the retaliation[ and]

---

[5] Department Order (DO) 803.4.0 relates to the "Filing and Disposition of Disciplinary Reports"; DO 902.1.4 concerns "Inmate Legal Assistants and Law Clerks." *See* https://corrections.az.gov/sites/default/files/documents/policies/800/DO%20803%20-%20Eff.%205-12-25.pdf; https://corrections.az.gov/sites/default/files/documents/policies/900/DO%20902%20-%20AL.pdf (last visited Aug. 7, 2025).

harassment by the prison officials." (*Id.*) He alleges he has the right to "respectfully speak out," remain silent and not speak,[6] file grievances or help inmates do so, and file lawsuits without fear of retaliation. (*Id.*) He also contends Defendants have "configured (sic) and nurtured an environment unsafe for inmates," where inmates are "essentially used as [the] overseer of other inmates" and then labeled as "influential" to "maintain their scapegoat when needed." (*Id.* at 20-21.) He claims Defendant Ochoa has "continued to retaliate, harass [and] abuse his power because [of] Plaintiff's grievances [and] lawsuits and for helping others to do so." (*Id.* at 21.)

### D.     Defendant Henry

In the section of Count Two concerning Defendant Henry, Plaintiff alleges Defendant Henry asked him in 2022 to help dig holes for a recreation fence and promised to reward Plaintiff and those who helped with "food plates for a fundraiser . . . and pay." (*Id.* at 22). Plaintiff contends Defendant Henry's "promise . . . was a lie," so Plaintiff and others who had helped dig the holes filed grievances. (*Id.*)

Plaintiff asserts Defendant Henry retaliated for Plaintiff filing grievances and helping others do the same. (*Id.*) He claims that at some point, "Defendants" charged him with "threatening and intimidating" for "something Defendants had said was ok and is a protected right[—]filing paperwork and telling others how . . . to remove DNHW[s] by mediation." (*Id.*) Plaintiff alleges "Defendants" sent him to lockdown and "placed a DNHW on Plaintiff without reliable or factual evidence." (*Id.*) Plaintiff contends this was retaliation, this was a "common custom, practice and pattern by Defendant," and "there is a connection between the protected rights and the events [that] transpired." (*Id.*)

Plaintiff alleges he was taken to Supermax due to "Defendants' false reports and as retaliation." (*Id.* at 23.) He contends that when he was being "sent back to the yard," he requested a corrections officer transfer him to the South Unit so he could "program and

---

[6] Plaintiff claims he told Defendant Ochoa "not to pull him out," he "did not want to speak to [Defendant Ochoa] or [Defendant] Casterjon," and "pulling inmates out to speak after issues[,] even against their will," could put "people's lives in danger." (*Id.* at 20.)

work" and because "they/Defendant[s] would do the same thing and make up a false disciplinary [charge] to get [him] off their yard" if he was returned to the Cook Unit. (*Id*.) Plaintiff asserts that although the corrections officer recommended Plaintiff be sent to the South Unit, he was sent to the Cook Unit, "where [he] was threatened and intimidated by all Defendants." (*Id*.)

Plaintiff claims that after he was on the Cook Unit for 37 days, Defendant Henry made a "very serious" "false disciplinary" charge.[7] (*Id*.) Plaintiff contends Defendant Henry "knowingly manipulated" ADC's systems "by his actions/inactions"; violated Plaintiff's civil rights by "retaliating and manufacturing a false charge . . . that placed Plaintiff in Supermax"; and, after the disciplinary charge was dismissed, extended Plaintiff's time in Supermax by "creating false DNHW[s]." (*Id*. at 23-24.) He claims that "even after knowing/being aware of all the facts," Defendants continued using "fake reasons (DNHW) to keep [Plaintiff] from going back to the yard and to remain in Max custody." (*Id*. at 24.)

### E.     Defendant Bowers

In the section of Count Two regarding Defendant Bowers, Plaintiff asserts that after he had been "retaliated [against], harassed, intimidated and threatened by all Defendants," he filed a grievance and grievance appeal to Defendant Bowers. (*Id*. at 25.) He claims Defendant Bowers indicated she would "forward [the grievance] to the appropriate administrators for review" but Plaintiff would not be notified of any investigation that might be initiated or corrective action that may be taken. (*Id*.) Plaintiff alleges "Defendants failed to protect Plaintiff from Defendants' retaliation" and asserts Defendant Bowers's response "amounted to a non-response to Plaintiff's grievances" and allowed Defendants' misconduct to "continue" and "become harsher." (*Id*.) He claims Defendant Bowers "knew what was going on" and "had the power to correct the wrongs" but failed to do so. (*Id*.)

---

[7] This disciplinary charge is the threatening and intimidating (gang activity) charge stemming from the July 17, 2023 townhall.

### III. Discussion

Although self-represented pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

It is insufficient to simply make vague and conclusory allegations against groups of Defendants, without any factual specificity as to what any particular Defendant did or failed to do. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of complaint that referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

#### A. Count One

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity,

TERMPSREF

- 12 -

a plaintiff must show the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Although Plaintiff sues Defendant Henry in Count One in his individual and official capacities, Plaintiff's allegations fail to plausibly show any policy, practice, or custom of any entity has resulted in his alleged injuries discussed in Count One. Accordingly, the Court will construe Plaintiff's claim in Count One as directed against Defendant Henry in his *individual* capacity only.

### 1. Eighth Amendment

Liberally construed, Plaintiff has stated an Eighth Amendment claim in Count One against Defendant Henry in his individual capacity. The Court will require Defendant Henry to answer the Eighth Amendment claim in Count One.

### 2. Retaliation

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claim requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest").

The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff has failed to meet this burden. Although Plaintiff alleges Defendant Henry retaliated against him for filing grievances, he alleges nothing to support this assertion. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

TERMPSREF

1  *Iqbal*, 556 U.S. at 678.  Thus, the Court will dismiss without prejudice the retaliation claim
2  in Count One.

### B.    Count Two

Although Plaintiff contends he was retaliated against for filing grievances and lawsuits and helping other inmates do the same, he alleges no *facts* to support this contention.  *See id.*  The only marginally relevant fact is his assertion that he received a disciplinary charge sometime after he filed a grievance regarding his pay for digging holes. But Plaintiff does not identify when this disciplinary charge was filed.  Moreover, based on Plaintiff's allegations, it appears the disciplinary charge was issued sometime after Plaintiff refused to be "pulled out" by Defendant Casterjon and to be an "overseer for SSU."  Even still, Plaintiff has failed to state a retaliation claim.  His allegations are simply too vague and conclusory to support a conclusion that Defendant Casterjon issued the disciplinary charge or did so because of Plaintiff's protected activities.

In addition, Plaintiff's retaliation claim is primarily premised on an assertion that "false" reports and charges were filed against him.  But Plaintiff has alleged nothing to explain why he believes the reports and charges were false; Plaintiff only alleges the charges were dismissed on appeal.  Likewise, Plaintiff refers to "false" DNHWs but does not adequately explain this assertion; it is unclear why the DNHW restrictions were false. Indeed, although Plaintiff contends there were four or more DNHW restrictions, he only discusses why one was "false."  Absent more, Plaintiff's allegations are too vague and conclusory to state a retaliation claim.

Moreover, Plaintiff vaguely refers to a practice or custom of using ADC's systems and SSU reports and memoranda to retaliate against inmates, but he fails to allege any facts to suggest the existence of such a practice or to support a conclusion he was retaliated against at all.  The only allegation marginally supporting a practice or policy appears to be Defendant Martinez's purported statement that she would send inmates to lockdown if inmate assaults did not stop and she would "keep sending [them] back . . . or make up something to keep [them] there."  But this does not support a claim there was a policy to

TERMPSREF

- 14 -

1  retaliate against inmates who exercised their First Amendment rights, as opposed to
2  punishing inmates who engaged in misconduct. Plaintiff's allegations are insufficient to
3  state a policy or custom claim. Likewise, because Plaintiff has not adequately alleged his
4  constitutional rights were violated, he has failed to state a claim based on Defendants
5  denying administrative grievances or failing to "correct the wrong."

6  Thus, the Court will dismiss without prejudice Count Two.

**IV. Motion for Preliminary Injunction**

Whether to grant or deny a motion for a preliminary injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

An injunction or restraining order is appropriate to grant "intermediate relief of the same character as that which may be granted finally," but relief is not proper when it is requested on matters lying wholly outside the issues in the suit. *DeBeers Consol. Mines v. United States.*, 325 U.S. 212, 220 (1945). To obtain injunctive relief, the party "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

In his Motion for Preliminary Injunction, Plaintiff seeks an injunction relating to Defendants' alleged retaliation. Because the Court has dismissed Plaintiff's claims regarding these issues, Plaintiff has failed to show he is likely to succeed on the merits of that claim. Thus, the Court will deny Motion for Preliminary Injunction.

. . . .

. . . .

TERMPSREF

## V. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Copies

Because Plaintiff is currently confined in an ADC Complex or private facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendant with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   Count Two and Defendants Bowers, Martinez, Casterjohn, and Ochoa are **dismissed** without prejudice.

TERMPSREF

- 16 -

(2) If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(3) Plaintiff's Motion for Preliminary Injunction (Doc. 13 at 49-52) is **denied**.

(4) Defendant Henry, in his individual capacity only, must answer the Eighth Amendment claim in Count One.

(5) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Henry.

(6) Plaintiff must complete[8] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on Defendant within 60 days of the filing of this Order, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order.

(10) If Defendant Henry agrees to waive service of the Summons and First Amended Complaint, he must return the signed waiver forms to the United States Marshal,

---

[8] If a Defendant is an ADC officer or employee, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at ADC's Central Office unless the officer or employee works there.

not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(11)   The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a)   personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12)   Defendant Henry, in his individual capacity only, must answer the relevant portion of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

. . . .

. . . .

. . . .

(13) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 7th day of August, 2025.

James A. Teilborg
Senior United States District Judge